UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ROBERTO MARTINEZ VILLA,**

      **Petitioner,**

                                    Case No. 5:02-CV-128
**v.**                                                Hon. Gordon J. Quist

**DENNIS STRAUB,**

      **Respondent.**

                                    /

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

**Background**

A jury convicted petitioner of the following: safe breaking, MCL 750.531; possession of burglar tools, MCL 750.116; and receiving or concealing stolen property over $100, MCL 750.535. Petitioner was sentenced as a fourth habitual offender to three concurrent terms of 12 to 20 years' imprisonment.

Petitioner raised the following issues on appeal to the Michigan Court of Appeals:

I.     [Petitioner's] conviction for receiving and concealing stolen property over $100 and possessing burglar tools should be reversed where the evidence was insufficient to establish that [petitioner] possessed the stolen property.

II.    The prosecutor engaged in misconduct and denied [petitioner] a fair trial when, in his closing argument, he improperly shifted the burden of proof and denegrated [sic] defense counsel.

> III. [Petitioner's] conviction for safebreaking must be reversed where there was insufficient evidence that the structure which housed the ATM machine and was the subject of the attempted break-in was a safe vault or other depository as required under MCL 750.531.
>
> IV. Where there was evidence to support the abandonment instruction requested by trial counsel, the court reversibly erred in not giving the instruction.

Petitioner raised one additional issue in a supplemental brief:

> V. Was [petitioner] properly convicted for offenses in Eaton County Circuit Court after he had pled guilty in Ingham County (the 54-A District Court) of offenses which arose from the same transaction?

The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Villa*, No. 220751 (Mich. App. Nov. 16, 2001). *See* docket no. 20.

Petitioner filed an application for leave to appeal to the Michigan Supreme Court raising the following issues:

> I. Whether or not there was sufficient evidence to convict [petitioner] of the charged offenses.
>
> II. Whether or not [petitioner] was denied a fair trial due to the prosecutor's improper and violative comments and misplacement of law.
>
> III. Whether or not the trial court erred in [failing] to give proper instructions (CJI2d 9.4), as to the abandonment of the crime and intent requirement of the charges against [petitioner] had already been exhausted.
>
> IV. Whether or not [petitioner's] right against being placed twice in jeopardy, where he had previously pleaded guilty in the 54-A District Court in Ingham County to prowling and interfering with a police animal, contrary to MCL 660.01 [sic] and MCL 602.08 [sic], when the action and time sequence of a police chase and alleged breaking and entering a "kiosk"

>   was the original cause that formed the conviction in the district court of the same course or transaction arising from one act.

Petitioner filed a supplemental ground for appeal as follows:

>   V.  Whether or not jurisdiction by Ingham County was a sovereign and proper when charges arising in said county were adjudged and thus constituted the Eaton County conviction void due to lack of subject-matter jurisdiction.

*See* docket no. 21.

The Michigan Supreme Court denied the delayed application. *People v. Villa*, No. 120771 (Mich. June 24, 2002). *See* docket no. 21.

In his petition for habeas review, petitioner contends that the Eaton County Circuit Court convictions (safe breaking, possession of burglary tools and receiving and concealing stolen property over $100) violated his double jeopardy rights under the Fifth Amendment, because he had previously pled guilty in the 54-A District Court in Ingham County to prowling and interfering with a police animal arising from the same transaction.[1]

## Discussion

### I.   Standard of Review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254 which provides that a federal district judge "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Where the state court has adjudicated a claim

---

[1] Petitioner did not utilize this court's habeas petition form. His allegations are spread throughout a 7 page typewritten petition. *See* docket no. 1.

on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 405 (2000), the Supreme Court interpreted 28 U.S.C. § 2254(d)(1) as creating a distinction between decisions that are "contrary to" and those that involve an "unreasonable application of" clearly established Supreme Court precedent. *Johnson v. Bell*, 344 F.3d 567 (6th Cir. 2003).

> A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." [*Williams*, 529 U.S. at 405]. A state court decision is also "contrary to" Supreme Court precedent if the state court "applies a rule that contradicts the governing law set forth" in that precedent. *Id.*

*Id.* at 572. On the other hand, an "unreasonable application" of clearly established Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.*, *quoting Williams*, 529 U.S. at 407. "An unreasonable application of law is not, according to the

4

Supreme Court, merely incorrect; rather, 'that application must also be unreasonable.'" *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001), *quoting Williams*, 529 U.S. at 411.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana*, 263 F.3d at 546-47, *quoting Williams*, 529 U.S. at 411.

Before a state prisoner may seek habeas relief in federal court he must first fairly present the substance of his federal claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270 (1971); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir. 1994); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994). Here, petitioner presented habeas issues I and II to the Michigan Court of Appeals on his initial appeal. Although petitioner renumbered his claims in his application for leave to appeal to the Michigan Supreme Court, he set forth the substance of those claims in his application.

Respondent points out that petitioner did not argue a federal double jeopardy claim in the state courts and that this claim is unexhausted. It is well established that a habeas petitioner must present his claim to the state courts as a federal constitutional issue, not merely as a claim arising under state law. *Franklin v. Rose*, 911 F.2d 322, 325 (6th Cir. 1987). As a general rule, a habeas petition containing unexhausted claims should be dismissed without prejudice. *See Rose v. Lundy*, 455 U.S. 509, 518-20 (1982). In the present case, petitioner relied on Michigan state decisions that addressed the issue of double jeopardy. The Michigan Court of Appeals addressed the issue under the decision in *People v. Stiff*, 190 Mich.App 111; 475 NW2d 59 (1991), which held that double jeopardy would not lie where the criminal acts complained of (i.e., municipal ordinance

charging illegal possession of a syringe and state statute charging possession of less than 25 grams of heroin) were not dependent upon each other for prosecution, were different types of conduct subject to separate prohibitions, and each criminal act was subject to prosecution in a separate court (i.e., district court and Detroit Recorder's Court). Petitioner's discussion of double jeopardy was almost exclusively based on Michigan State law regarding the ability to successively prosecute an ordinance violation in district court and an arguably related felony violation in circuit court. Petitioner's presentation of the issue did not include the type of federal constitutional analysis which the Sixth Circuit considers necessary to fairly present a federal constitutional claim. *See McMeans v. Brigano*, 228 F.3d 674, 681(6th Cir. 2000).[2]

However, it unnecessary for the court to address the exhaustion issue. Under 28 U.S.C. § 2254(b)(2), federal courts have the discretion to deny habeas relief on the merits regardless of whether the petitioner has exhausted his state remedies. *See Jones v. Jones*, 163 F.3d 285, 299 (6th Cir. 1998). As the Sixth Circuit explained in *Linger v. Akram*, No. 98-3506, 2001 WL 1136040 (6th Cir. Sept. 19, 2001):

> Because the "exhaustion" requirement is not jurisdictional, and the principles of comity and federalism which undergird that prerequisite are not offended by a federal court's refusal to grant habeas relief

---

[2] In *McMeans*, the Sixth Circuit identified four actions that a petitioner can take which are significant to the determination of whether the substance of a claim has been "fairly presented" to the state courts:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (citation omitted). General allegations of a denial of a federal constitutional right, such as the right to due process or to a fair trial, do not "fairly present" claims that specific constitutional rights were violated. *Id.*

6

> against a state by *rejecting* an unexhausted claim on its merits, federal
> judges possess the discretionary authority to *deny* unexhausted habeas
> claims on their merits to avert the purposeless future litigation, in the
> state courts, of substantively ill-conceived contentions.

*Linger*, 2001 WL 1136040 at * 3. [Emphasis in original.] In the present case, the court concludes that petitioner's habeas claims are without merit. Accordingly, the court will exercise its discretion to address petitioner's claims to avert purposeless future litigation.[3]

### III.    Petitioner's Habeas claim

Petitioner was convicted of three felonies in the Eaton County Circuit Court: (1) receiving or concealing stolen property over $100, MCL 750.535; (2) possession of burglar tools, MCL 750.116; and (3) safe breaking, MCL 750.531. Petitioner sets forth the following chronology. On December 27, 1998, at approximately 1:24 a.m., Eaton County deputies were dispatched to investigate the apparent breaking into of an ATM machine located at a Clark gas station on West Saginaw in Eaton County. Petition at ¶ 9[a]. Deputies failed to locate the subjects or the suspect vehicle, but the deputies found forced entry into the ATM machine. *Id.* Then, at approximately 1:57 a.m., an Eaton County sheriff's deputy spotted a a dark grey minivan matching the description of the suspect vehicle parked behind the Clark gas station. *Id.* at ¶ 9[b]. The deputy observed the van leaving the parking lot, identified it as a stolen vehicle, and then pursued the vehicle. *Id.* The deputy attempted to stop the minivan by activating his own vehicle's emergency lights and siren, but the minivan fled from Eaton County into the City of Lansing. *Id.* The minivan stopped abruptly and the deputy's vehicle hit the driver of the van, who had jumped into the path of the deputy's vehicle.

---

[3] The court previously denied petitioner's motion for an evidentiary hearing, reserving the right to schedule an evidentiary hearing at a later date if necessary to evaluate petitioner's claim. *See* Order (April 23, 2003). Upon review of the record, it is unnecessary for the court to schedule an evidentiary hearing in this matter.

*Id.* at ¶ 9[c]. The passenger, later identified as petitioner, fled the scene. *Id.* City of Lansing police officers who were assisting the deputy called in a canine officer and dog to track petitioner. *Id.* Petitioner was located in a garage off of Martin Luther King Boulevard in the City of Lansing. *Id.*

Petitioner was charged (in Ingham County) with the violation of Lansing city ordinances of prowling and interfering with a police animal. *Id.* at ¶ 9[d]. A two-count misdemeanor complaint filed in 54-A District Court in Ingham County charged petitioner with violating Lansing City ordinances, 660.01a and 602.08, on or about December 27, 1998:

> **Count I**
> [Petitioner] did prowl about the premises of another in the nighttime at or in the vicinity of 515 North Martin Luther King Blvd., Lansing, Michigan, without the permission or authority of the lawful occupant of said premises or his/her agent, contrary to the provisions of the Code of Lansing, being 660.01a.
>
> **Count II**
> [Petitioner] did willfully hinder, harass, injure, annoy or interfere with a police animal being used for law enforcement purposes at or near the vicinity of 515 North Martin Luther King Blvd., Lansing, Michigan, contrary to the provisions of the Code of Lansing, being 602.08.

Misdemeanor complaint. *See* Docket no. 20. Petitioner pled guilty to these charges on February 10, 1999. Petition at ¶ 9[d].

Petitioner was also charged with the three felonies (receiving or concealing stolen property over $100, possession of burglar tools and safe breaking) in Eaton County. *Id.* at ¶ 9[f]. Petitioner moved to dismiss the felonies on a claim of double jeopardy under the Fifth Amendment of the U.S. Constitution and Art. 1, Sec. 15 of the Michigan Constitution, claiming that he had pled guilty to the same offense in 54-A District Court. *Id.* The trial court denied petitioner's motion to dismiss. *Id.* at ¶ 9[i].

On appeal, petitioner raised several contentions, two of which are relevant to his habeas petition. First, petitioner contended that insufficient evidence supported his felony convictions. Second, petitioner contended that these three convictions violated his double jeopardy rights, because he had previously pled guilty to violating the two Lansing City ordinances in the 54-A District Court.

The Michigan Court of Appeals found sufficient evidence to support each of the three felony convictions:

> First, regarding receiving or concealing stolen property, the evidence indicated that the vehicle used in the offense, a mini-van with a fair market value over $3,500, was stolen from a used-car lot. Defendant admitted in his statement to the police that he knew the mini-van was stolen and that codefendant Hart had used a screwdriver to start the van, because the ignition was missing. There was also evidence that the license plate on the stolen vehicle was registered to defendant, which would support a finding that defendant participated in possessing or concealing the vehicle. Thus, the evidence was sufficient to enable the jury to find that defendant was guilty of receiving or concealing stolen property over $100.

*People v. Villa*, No. 220751, slip op. at 1.

> Second [regarding possession of burglar tools], the police found, inside the stolen mini-van, a flat-bladed screwdriver that was identified as having made the mark on the ATM machine. A flat-blade screwdriver can be a tool or implement adapted and designed for breaking and entering. *See People v. Olson*, 65 Mich.App 224, 229; 237 NW2d 260 (1975). Additionally, a witness testified that he saw one man bent over the ATM machine, while another man shined a flashlight, thereby indicating that defendant and codefendant Hart were coparticipants in the offense. The jury could reasonably conclude that defendant shared constructive possession of the screwdriver, which was found between his passenger seat and the driver's seat in the stolen mini-van.

*Id.*, slip op. at 2.

Third, defendant argues that the evidence was insufficient to convict him of safe breaking because only the structure housing the ATM machine was damaged, not the ATM machine itself.

MCL 750.531 provides, in pertinent part:

Any person who, with intent to commit the crime of larceny, or any felony, . . . *shall attempt to break . . . or otherwise injure or destroy any safe, vault or other depository of money . . . in any building or place, shall, whether he succeeds or fails in the perpetration of such larceny or felony, be guilty of a felony*, punishable by imprisonment in the state prison for life or any term of years. [Emphasis provided.]

In *People v. DeVriese*, 77 Mich.App 737, 738; 258 NW2d 93 (1977), this Court stated:

In enacting M.C.L. § 750.531; MSA 28.799, the Legislature sought to protect structures intentionally constructed to protect valuables. *People v. Ferguson*, 60 Mich.App 302; 230 NW2d 406 (1975). In our opinion this includes those constructed by a manufacturer for sale or an individual for his own use so long as the structure is one which is substantially impenetrable. *People v. Collins*, 273 Cal App 2d 1; 77 Cal Rptr 741 (1969). The issue of whether a depository is substantially impenetrable so as to fall within the terms of the statute is a question of fact. *People v. Collins, supra.*

The evidence at trial indicated that the "kiosk," which is the structure housing the ATM machine, was part of the ATM's security structure for money contained in the vault of the ATM. There was sufficient evidence that defendant and co-defendant Hart sought to break into the ATM machine and steal money from the vault by first breaking through the outer security structure. Specifically, the testimony indicated that "the rear door of the ATM machine had been pried open causing damage to the locking mechanisms." Thus, there was sufficient evidence to sustain defendant's conviction for safe breaking under M.C.L. § 750.531.

*People v. Villa*, No. 220751, slip op. at 2.

In addition, the appellate court rejected petitioner's double jeopardy claim:

> Finally, defendant argues that his double jeopardy rights were violated where he had previously pleaded guilty in the 54-A District Court in Ingham County to prowling and interfering with a police animal, contrary to Lansing city ordinances 660.01a and 602.08. We disagree. Because neither the district court in Ingham County, nor the Eaton Circuit Court had jurisdiction over all of the offenses, and because the criminal acts in question consist of different types of conduct subject to separate prohibitions involving laws intended to prevent different evils, the trial court did not err in denying defendant's motion to dismiss. *People v. Stiff*, 190 Mich.App 111; 475 NW2d 59 (1991).

*People v. Villa*, No. 22075, slip op. at 3-4. The Michigan Supreme Court affirmed in *People v. Villa*, No. 120771 (June 24, 2002).

Petitioner contends that the Michigan state court decisions were contrary to and involved an unreasonable application of the Supreme Court's decision in *Waller v. Florida*, 397 U.S. 389 (1970) and his rights under the Fifth Amendment. Petition at ¶ 9. In his response to respondent's answer, petitioner contends that all of the offenses were part of one continuous criminal transaction. Petitioner's Response to the answer and Petitioner's Appendix.

Petitioner has provided the court with a portion of a transcript from a "motion to consolidate" and "motion to dismiss" filed in Eaton County Circuit Court, apparently to demonstrate that the prosecutor admitted that the ordinance violations and felonies were part of the same transaction. *See* Petitioner's Appendix; Motion Trans. (April 16, 1999) (docket no. 15). The motion to consolidate sought to have the felony charges against two defendants, petitioner and Anthony Hart, consolidated for trial. Motion Trans. at 4-5. At that time, the prosecutor characterized the charged acts as resulted or occurring during the same transaction: a robbery in Eaton County and a

11

chase that ended up in Ingham County. *Id.* Petitioner, however, omitted the balance of the transcript which dealt with the trial court's denial of his motion to dismiss.

Later in the hearing, the prosecutor stated, "I never meant to say that [petitioner's] two city ordinance violation[s] were part of the same transactions as the involvement of [petitioner] with [Hart] in the robbery from the ATM or in the fleeing and alluding [sic] because there is a separation in time between the time when [petitioner] and Hart bail out of the van." *Id.* at 13. The prosecutor continued:

> Hart gets run over. And [petitioner] takes off running and takes off running [sic] I think for about a mile and a half over to Martin Luther King Boulevard. He's caught hiding in a shed. Get's [sic] caught by a police dog and Lansing officer who sent the dog in after [petitioner].
>
> And that is a separate telephone call by a separate citizen entirely who says somebody's out there in my garage. . . .
>
> We have no control over what the city attorney does in Lansing. There's no way this court would have any kind of jurisdiction to take control of that case. . . .
>
> Furthermore, Your Honor, on the second grounds [sic] I think that [petitioner's] motion should fail is he was charged with prowling and with interference with a Police dog. The, the point of both of those ordinances is geared towards something entirely different from robbing an ATM machine or resisting actually a Police Officer. He was interfering with a Police dog. And he was prowling at a particular individual's house there in Lansing.

*Id.* at 13, 14, 15.

The judge denied petitioner's double jeopardy argument, reasoning in part:

> We would be in a ludicrous situation if someone could engage in allegedly multiple felonies in one county, drive into another, jump out of the car, run and go into 54-A District Court in this case, and plead guilty to interfering with a Police animal and prowling.

> The prowling is certainly a separate offense. It's not part of the transaction here. And interfering with the Police animal, even that charge is arguably a whole different situation. That goes into [the prosecutor's] second argument.
>
> Certainly the purpose behind those two ordinances is something entirely different than the purpose behind our State tracking [safe cracking] statute.
>
> And what else are they charged with here? Possession of burglary tools, stolen property in excess of a hundred [dollars], and resisting and obstructing a police officer.
>
> The purpose behind those felony, alleged felony violations on the one hand and these two city ordinances on the other, the difference is as night and day.

*Id.* at 17-18.

### *Blockburger* test

In order to decide whether a second prosecution under different statutes would place a defendant in double jeopardy, the court applies the same-elements test, or "*Blockburger test,*" to determine whether each statutory offense requires proof of a fact not contained in the other. *See United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Palazzolo v. Gorcyca*, 244 F.3d 512, 519 (6th Cir. 2001). The test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *Dixon*, 509 U.S. at 696.

In determining whether double jeopardy exists in successive prosecutions involving municipal ordinances and state statutes, the court should apply the "same elements" test set forth in *Dixon*. *See, e.g., Pritchett v. Jabe*, No. 96-1493, 1998 WL 415977 at *4 (6th Cir. July 6, 1998) (applying *Dixon's* "same elements" test to defendant's successive convictions under a municipal

ordinance and a state narcotics statute, court found no double jeopardy, because the local ordinance charge of "frequenting an illegal business establishment" contained distinct elements from state statute prohibiting the "deliver[y of] a controlled substance").

In the present case, the two municipal ordinances contain distinct elements that are not contained in the three state statutes. The prowling ordinance involved prowling "about the premises of another in the nighttime . . . without the permission or authority of the lawful occupant of said premises or his/her agent." "Prowling" is not an element present in the felonies of receiving and concealing stolen property, possession of burglar tools, or safe breaking. *See People v. Villa*, No. 220751, slip op. at 1-2. In addition, the municipal prowling charge did not involve additional elements required to prove any of the three felonies. Similarly, the police animal ordinance required that the individual "willfully hinder, harass, injure, annoy or interfere with a police animal being used for law enforcement purposes." None of the three charged felonies included an element that the offender interfere with a police animal. *See People v. Villa*, No. 220751, slip op. at 1-2. Each ordinance violation contained at least one element not contained in the other ordinance violation or the felony. Accordingly, the felonies were not the "same offense" as the ordinance violations and double jeopardy did not bar additional punishment or successive prosecution. *Dixon*, 509 U.S. at 696.

### Dual sovereignty and *Waller v. Florida*

Petitioner also cites *Waller*, 397 U.S. 387, for the proposition that double jeopardy applies to him because the two misdemeanors were part of the same transaction as the three felonies. The court disagrees with petitioner. In *Waller*, the Supreme Court rejected a dual sovereignty argument, i.e., that the relationship of a municipality to the state was analogous to the relationship

between a state and the federal government so as to allow separate charges brought by both sovereigns for the same crime. The Supreme Court held that the Florida courts erred in holding that "even if a person has been tried in a municipal court for the identical offense with which he is charged in a state court, this would not be a bar to the prosecution of such person in the proper state court. *Waller*, 397 U.S. at 395. Petitioner correctly contends that under *Waller*, he could not be convicted of identical offenses by a municipality and a state circuit court. *Waller*, however, is inapplicable to the present case because petitioner's municipal offenses (prowling and interfering with a police animal) were not identical to the state offenses (receiving or concealing stolen property over $100, possession of burglar tools and safe breaking). Accordingly, petitioner's dual sovereignty argument fails.

The Michigan Court of Appeals' resolution of the double jeopardy issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

## **Recommendation**

I respectfully recommend that petitioner's habeas petition be dismissed. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  April 26, 2005                             /s/ Hugh W. Brenneman, Jr.
                                                   Hugh W. Brenneman, Jr.
                                                   United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).